STEELE I know that the panel always hears some lawyers who say the trial judge below made a mistake, but this is one of those rare appeals where I know that is the case. Even opposing counsel agrees the trial judge, in her words, was clearly erroneous in one of the three key rulings before the court. And what we're really struggling with and disagreeing with is what should the appellate court do about that? Because we're dealing with the procedure. Where is Bayside? They're not in this appeal. I don't know where Bayside is. Are they served? Have they been treated as party to this appeal? I mean, one of the things you think you're asking for is to vacate their dismissal from a case, right? I really am not sure why Bayside is not here. I was thinking about that as I was preparing the last couple days that, you know, for reasons that I'm scratching my head as well, why isn't Bayside here? Because you serve them with briefs? I'd have to check my office. I'm not sure. Okay, go ahead. So what we're disagreeing with is what does this, what should this court do to remedy the trial court's errors? The case goes back actually 20 years when a fairly local infamous cleanup started at the Western Processing site. It was one of the first big Superfund cleanups. Fast forward to the early 90s, and we've got. Just to go back a minute. As far as I can tell, they weren't served with a brief. I'm looking at the brief. You didn't serve. You only served Kimberly Greco. Okay. You did not serve to be a lawyer for Bayside. That may be why they're not here. That could be it, Your Honor. Pretty hard to vacate a dismissal against them when they're not here. But go ahead. All right. In the late 80s and early 90s, the case had been litigated fairly aggressively, and parties were starting to settle. There were actually two basic lawsuits going. One is what we called the Boeing and American TAR case. They were trying to recover monies from Tree Island and other parties that had had some share in the cleanup, and parties were settling with Boeing and the American TAR group. One of the parties that did settle was Bayside, and they entered into a settlement agreement, and then they turned to the trial judge and said, We've now settled. We'd like you to dismiss other parties' claims against us for contribution. And the trial court granted that relief over Unical's objections. Tree Island, within a month, presented the exact identical order. The trial judge said, We have also settled with Boeing, and we would like the same dismissal of any contribution claims by Unical and other parties. And to our astonishment, although we had sent a check to Boeing for over half a million dollars in order to buy peace and get out of this lawsuit, we were still in it. The trial judge changed his mind, did not follow the same order that he'd entered in favor of Bayside and kept Tree Island Steel in the case. Now, the key order, which actually preceded those two orders, was what we've referred to in the briefing as the 1990 order, and that was the order entered by the trial judge when he approved other similar settlements that other parties had entered into with Boeing. I think there were 23 parties. And the court laid out the game plan to get out of the case completely, and I'll concede that that order laid out a game plan that said that in order to be absolved of liability from Unical, you need to settle with Unical. Let's assume you're right. Okay, let's get to the bottom of this. Yes. All right, let's assume you're right. You made a mistake. Then what? Well, the implication was that at the trial, when we essentially presented stipulated facts to the judge and said, now we'd like you to decide what Tree Island and then one other defendant's volumetric share in fair liability would be, the trial court had Tree Island suffer the consequences of not including Bayside. He never changed his ruling that Bayside had no liability. As a result, you took nearly a million gallons out of the ---- Well, that hasn't been established, right? There's a dispute over that. I don't believe so, Your Honor. It's not that there was. There was a quantity dispute over the number. No, I think we're in agreement on the exact amount of ---- No, there was ---- we knew all of the numbers by every single party. I'll let counsel address that, but I believe that we were all in agreement as to the exact gallon to the ---- Tribunal to Bayside? Tribunal to Bayside. That wasn't the issue. It was that none of Bayside's nearly one million gallons was included in the denominator. And, of course, numerators and denominators, we're the numerator. We want the denominator to be as large as possible. UNICAL wants to shrink it. And so the court said, I ruled that Bayside has no liability to UNICAL. It's not going to be part of this equation. He never explained why. He never explained why. And Treiland kept insisting, Judge, that's not fair. I mean, we were the exact same party in an identical legal position, and why should we get the same benefit? You're not asking for Bayside to come back in, and you're not asking for you to be let out, but you're just asking for this to be taken into account in the denominator of the fact. I think that's the appropriate result, although when the court looks at the two inconsistent rulings, letting Bayside out of liability and keeping Treiland in, it is possible for this Court to reverse the Treiland order and give us the benefit of the Bayside protection. But I will concede that then that would be inconsistent with the first of those three key orders, the 1990 order, which did really lay out. And it wouldn't make any sense. I mean, there's no reason why Bayside should have been dismissed or why you should be dismissed, because these two cases dealt with two different things. I believe that's correct, Your Honor, because we both, Bayside and Treiland, had contributed various amounts of waste to the cleanup, and both should have been responsible. And we've never fought the notion that we're not going to pay our fair share. The question is, what should that denominator be when the court did its allocation? Well, I got the impression that Bayside thought it was only responsible for 855 gallons. No. No. So at the trial, there was an agreed amount attributable to Bayside? Yes. 947,414? Pardon me? 947-and-some-thousand? Yes. I know it was 900-some-thousand gallons. And that was the figure that Unocal and Treiland both agreed was Bayside's volumetric share of liability. And Bayside may not have agreed to that, but Bayside wasn't there. That's correct. And I don't know whether they agreed or not, but we all were in agreement that that was Bayside's share. Except for where it's Bayside.  And that gets, yes. But if you add them into the denominator at this point, it doesn't make any difference because they're out, right? But only if the court upholds the order that counsel, both counsel agree was erroneous to let Bayside out. They're not here. I'm very nervous about doing something to them when they're not here. Okay. I don't, I can't explain why they're not here. I don't know why Unocal did not. How do we order them back into the case? That seems like an elemental violation of due process, doesn't it? Well, it may be then that the court. Guess what? We had a hearing. You weren't there. You lose. You're back in the case. Bring your checkbook. I know. I know. I don't know how we do that. You appealed this case, right? We appealed the case, and we appealed. But we did appeal the Bayside order, and I'm not sure why. I mean, they're not served. I don't, I don't disagree, but I don't. You're a good lawyer. Put the shoe on the other foot and switch the parties. You didn't get served. You're sitting over there out. You're saying, boy, did we get a good one for this. All of a sudden, you get a letter in the mail saying, you're back in. You go bonkers. Where was my due process? I think given the procedural posture, the court can do one of two things. It could say, you guys need to go back and bring Bayside in. This case has been fouled up. You should have been brought in. The second. You started out by telling us this case is 1,000 years old. We want to make it 2,000 years old? Yeah, yeah. The endless case. Second thing. It is a very long case. The other is to rule on the denominator issue. I assume you last counseled for Unical. What's your explanation why Bayside's not here? You did, you tell this Court the Bayside order was erroneous. They should have been required to pay their fair share. There was a settlement recently, right? Pardon me? But there was a settlement that Bayside was in, that Unical was in. Was Bayside in that settlement? Yes. We'll ask her. Okay. Yeah, I don't recall if Bayside was in that settlement. You also want to expand the denominator by adding in the non-settlement. Yeah, that's another issue, which has to do with the application of the Uniform Comparative Fault Act and the case law that says that when you divide responsibility among the parties, you look at all the solvent non-settling parties, you look at their shares, and here everybody agreed it would be volume, and you include that in the denominator. The trial court left that out. Unical did not pursue those parties, did not establish that they were insolvent. That's a big figure. They were sued. That's a very large figure. Huge. Well, it makes a big difference to Tree Island. Tree Island, if you look at all of the volumetric waste shipped to this particular site, Tree Island had about 75,000 gallons, which was one-fourth of 1 percent, and as a result of the trial court's ruling, Tree Island was held responsible for nearly 3.7 percent, a 15-fold multiplier. Now, some of that increase is going to be due to the fact that you've got orphan shares and people settle out and the like, but a big part, as the judge noted, is because the court did not include in the denominator those defendants who were sued by Unical who were not established to be insolvent or orphan shares. Should the – there was an assertion in the pretrial order by Unical that these people were either insolvent, not findable, or de minimis, and that was the last it was heard of. There was never any evidence put on it. There was no evidence at all on that issue. So is that the problem? There had to be some evidence? There needed to be some evidence. The law creates a presumption. Pardon me? There was never a stipulation or an understanding or a waiver? No, no, no. The court creates a presumption. There was no finding by the trial court afterwards? No. The court made no findings on that issue of their insolvency. Now, I don't. Did you object to their dismissal? Oh, yes. Yes, we filed motions for reconsideration. And, again, our two issues were always if you're not going to reverse the order imposing liability on us and give us the benefit of the Bayside order, then, and this is the same thing arguing in this Court, then you've, then two, one of two things should happen. Either Bayside's waste should be included to dilute our proportionate share, well, not or, but and, in addition, those defendants who were sued and who the law presumes to be solvent, their waste should also have been included. Now, actually, in those people, would we remand to find out whether they're insolvent or is your position that the trial's over and they didn't prove it? Our position is the trial is over. The, excuse me, Unical sued them. There's a presumption that they are solvent. The court had data about their volumetric share. It should have been included. I don't think we need to remand to have further findings on what their shares were. That was before the trial court. They should simply be included. Therefore, if they turn out to be insolvent or non-findable, whatever, it's Unical's problem. That's Unical's problem. And I don't think it would be They could go after them. Pardon me? They could go after those defendants. Well, this was their opportunity to do so. I, again, you know, feel They dismissed them, sir. I don't know when they formally dismissed them or simply didn't pursue them, but they were named defendants. Okay.  Yes, thank you, Your Honor. Morning. May it please the Court. I'm Kim Greco representing Unical in this matter. I'd like to start by saying that one factual issue that hasn't been noted up until this point in this hearing is that not only did Unical name several, I mean, tens of severals parties as additional third-party defendants in its contribution action, but cross-claims and or counterclaims were asserted by Tree Island against those very same parties as well. So to the extent that Unical or Tree Island had, you know, the burden to show insolvency or unavailability of those parties and therefore shift the burden for their absence to the other, that burden was the same. Unical had just as much in or Tree Island had just as much incentive to show that. It's only going, except it's sequential, I think, that you have the joint and several liability, and if you don't prove up the insolvency, then you are going to absorb the joint and several liability for the people that you haven't proven are insolvent. So then there's no, their cross-claim is only for anything that may be attributed to them with regard to those people, but nothing may be attributed to them if you haven't proved up in the first place. That is a, that's a fair point. But we believe that because of the tenor of the proceedings at the time and the involvement of Tree Island, I mean, this, yes, Unical was jointly and severally liable. Tree Island was severally liable to Unical. But the result of what Judge McGovern did didn't establish any sort of joint and several liability on, on the part of Tree Island. The judgment that Unical has against it is a several judgment, and it is not responsible. You're essentially making them jointly liable for these, for these phantom parties. Have they saddled with a higher share? They are saddled with a, what we believe to be an equitable share of the absent party's volume. It may have been more mathematically precise for Judge McGovern to do this in a two-step process. Equitable? I don't know. How do you use equitable to decide who owns what if you're using volumetric? But volume wasn't the only thing that the judge was using when he made this determination. Yes, volume was one factor, but his decision to use a denominator as opposed to any other number of denominators that could have been devised by the parties was, in essence, him selecting how to apportion orphan shares as, or using apportionment of orphan shares as one of the factors. Orphan shares. I mean, there's a predicate here, which is who has to prove that they're orphans as opposed to just ignoring them. Well, we believe that any party at the trial bore the burden to do that. We believe it was as much in the interest of Tree Island to do that as Unical. Why? You were the plaintiffs. You were seeking to get money from Unical, and you were seeking to establish the amount that you were entitled to from Unical. Usually, the plaintiffs have the burden to prove. So why do they have the burden to prove? Because they were, in essence, third party or a liability. But only after you discussed liability. So let's leave that out because it didn't happen. If you established the liability and now they wanted to go after these other people, that would be different. But right now we're trying to figure out what is the amount of money for which they're liable to you, and you need to establish that. Well, we're looking at it from the point of view of Judge McGovern exercising his discretion as afforded by the statute to select what factors he's going to use. So you're arguing that he could simply absolve you of your responsibility to prove that orphanship? Not necessarily absolve Unical, but spread the responsibility for those absent parties among the participants at the trial, that that was a factor which he was able to employ in his discretion pursuant to the statute. Is that really what he did? That's not what he did, though. I mean, you're trying to characterize something, and I'm having trouble matching that up with what he actually did. You're saying he sort of could have, maybe he did, but that isn't what he did. I think it would be more explicit, perhaps, had he used a two-step process, and through the first step determined Unical, Tree Island, the other co-defendant in the trial, and the orphan share, and then went ahead and apportioned that orphan share in step two to increase everyone's volume. But he didn't do that, did he? No, he didn't. He didn't. He took a shortcut. He used a mathematical shortcut to do it. Right. So how do we keep them? I mean, your first argument was, well, he did this. He equitably apportioned. But you have to admit, he didn't do it. But equitable apportionment doesn't necessarily mean mathematically precise apportionment. It's not fair what he did. It's not fair to them. It's not fair to Unical. But aside from how he apportioned the orphan shares, he never made a finding about why these orphan shares were not there. That's right. Correct. Before he ever talked to apportionment, he never found that these people were in fact – we're not talking Bayside now. We have to get to that. But everybody else. He never found that they were insolvent, unattainable, or de minimis at all. He just ignored them. Right. Were they dismissed or just didn't play a part? They didn't take part in that particular trial. Unical did contact many of them afterwards in an attempt to pursue them for their responsibility. There were some settlements with some of the parties, but there were also some parties that just couldn't be found, couldn't – were defunct, couldn't be served, what have you. Well, if you pursued them and you settled with them, then you got double recovery. It helped everything else. I'm sorry? Then you got a double recovery. I'm sorry. If you pursued some of these people and settled with them, then you essentially got a double recovery. Yes. Maybe. The argument, though, is that if Tree Island paid more than its proportionate share, it, having sued, named those parties, could have pursued them, like Unical did, to obtain their fair share of what it was required to pay in excess of its share. But the only possible rationale for the result was that they don't exist, if you're now going after them, because they do exist. Well, let's leave them aside. Let's get to Bayside now. Okay. First of all, where is Bayside in this appeal? Unical has initially appealed the issue of Bayside's dismissal from this case. And there was a global settlement reached wherein Unical and Bayside settled those issues that were part of this appeal. Early last year. So Bayside has been dismissed. Well, they were already dismissed, but Unical has released them from any further distribution. But Tree Island has an independent interest in having Bayside back in, and they haven't dropped their appeal. They just somehow didn't serve them. But they have appealed from that judgment. Right. And that's the remedy that Tree Island has as far as Bayside is concerned. If this Court feels that Bayside is properly or was improperly dismissed or claims against it was improperly dismissed with prejudice, the remedy that Tree Island has is to pursue Bayside for whatever Tree Island paid that should have initially been paid by Bayside. And I don't think that this Court has to bring Bayside back into this case in order to make this right. Bayside was dismissed improperly by the Court. But — So that being the case, what possible — if we were to decide that, and both of you are telling us that, and it certainly seems that there's no rationale for it, then what is the rationale for leaving them out of the denominator? Well, you need to look at where the parties were at the time and what Judge McGovern knew at the time. I mean, it's — He made a mistake, all right? He was wrong. He should not have dismissed them. So now why don't we have to send it back and say, at least you have to put Bayside into the denominator. There's no reason they should be bearing the share of that. Because at the time, he — he attempted to account for the absence. But he was wrong. He was wrong about that. And although you settled with Bayside, why can't we go back and say they at least have to be in the denominator? I'm not disagreeing that it wasn't an unfair outcome. But there were a lot of things that were not fair to all the parties in this case. You know, Judge McGovern disregarded toxicity as a factor to apportion liability. Unical's hazardous material deposited at the Superfund site was less toxic than table salt. All of that may be right. But the question — the precise question we have is whether or not to put Bayside's number back in the denominator. And it seems the answer to that question is only you have to put it there. I think the effect of Judge McGovern's apportionment methodology that he used, his selection of the denominator. But they've appealed this. I'm sorry? That may be true, but they didn't — you didn't appeal all that, and they've appealed this. So now we have one issue. We don't have the toxicity issue. We don't have the volumetric issue. We don't have any of it. We have this. All right? As to this, why don't — why isn't it true that he, having erred in dismissing Bayside, Bayside should go into the denominator? Because we believe that by apportioning liability the way that he did and selecting the denominator that he picked, that he essentially accounted for their absence. And that Unical's volume was higher than it would have been had Bayside been there. And the other defendants at trials, percentages of liability were higher than they would have been had Bayside not been there. Is that reflected in the record, that Unical's volume was higher because Bayside was absent? I'm just speaking from a mathematical point of view. There wasn't a specific finding that the Court made on that point. But if there was another party with a million dollars in its column, or a million gallons in its column, you know, everybody's liability would have been reduced accordingly, percentage-wise. Is there a dispute over the volume attributable to Bayside? Not — no. Not at this point. So you agree it's 947,414 gallons, not the 855 that's floating around in the records? That was Bayside's position, and they're not here. Unless Your Honors have any further questions, I've had to go. Is there any way in which the settlement affects this case? I'm sorry? Any way in which the settlement affects this case? I don't believe so. I believe, just as any settlement, is based on a variety of factors, you know, some of which may include the potential outcome of the case. If it were Bayside before, how would it have affected the case? Before the trial? Yes. Unical's volume at trial was calculated by adding the volume of waste Unical sent to the site, as well as the volumes of waste of the parties that Unical had settled with prior to trial. If Unical had settled with Bayside prior to trial, their volume would have been included. And so it would have affected, would have, the effect would have been that Island, that Triana would not have had to pay, would have had to pay less. That's right. Correct. We got it. Thank you. Thank you. As I listen to the questions and the answers, it's now coming back to me. Bayside, I think the reason they're not here is they did settle with Unical. But they didn't settle with you. And you're trying to get their dismissal overturned. Well, the effect of overturning their dismissal is to include them in the denominator. As the Court, as you just asked, Your Honor. I know. Now I'm realizing that at trial, properly, everybody agrees, the judge calculated for Unical's pot its volumetric share plus the volumetric share of everyone with whom it settled. Because as part of the settlement, Unical says, you pay me and I'll take care of your volumetric share. I think the simple solution is if this Court remains the trial court to recalculate based upon the volumetric share of Unical and everyone with whom it has settled, that is another way to get Bayside's volume in without dealing with the problem of, gee, why wasn't Bayside served with these appeal papers? And I think that may explain why we did not bring or serve Bayside with these. Pardon me? A slightly different effect for you because it wouldn't get all the orphan shares. Well, that's a separate issue. I think separately the Court needs to do that. We've got two things to increase the denominator. One is to include Bayside. And inasmuch as we sit here today, Unical has settled with Bayside and presumably has agreed to accept responsibility for Bayside shares, then Tree Island would get the benefit of them being brought in. So that's the simple. This case is a declaratory judgment action, right? Yes. No money is exchanging hands right now as a result of this judgment. Correct. Right? Correct. All we have right now is a percentage number and a judgment. So, therefore, the fact that the settlement has now occurred really changes the facts that are relevant to the ultimate question of who's going to pay what later down the line. In other words, it was a declaratory judgment action at a point in time, but it's not really fairly going to project. Not at all. Not at all. Because the facts change now because they've now settled. Yes. And a practical result, Tree Island, if this judgment stands is going to be paying a lot more than its fair share because we now know that with this appeal having been filed against Bayside by both Unical and Tree Island, it settled. It's now agreed to accept responsibility. Now, I don't know as I sit here what its exact numbers were, but it's agreed to accept responsibility. So as a suggestion to get out of the procedural issue the court properly raised, a remand to the trial court with instructions to recalculate the denominator to include those parties that have settled with Unical would effectively get trail in the same result of including Bayside. Where's Judge McGovern from? He's a Seattle-based judge. A Seattle-based judge? Yes. He's been on senior status for... He's still sitting, is my guess. I believe so. He doesn't work a whole lot, but this is one case I think he still has on his docket. I think he was on senior status when he started the case. I mean, it's remarkable, but... Yeah, I'm just sitting here thinking. They go on forever. Well, but I don't think a remand, even if there were a different judge or he completely retired, it's a very straightforward mathematical thing to do. The parties agree on the numbers. It's just simply a matter of do you or do you not include Bayside in the denominator, and do you or do you not include in the denominator all of those presumably solvent defendants that Unical served. Let me make one other point. Counsel argues, well, we had asserted boilerplate cross-claims to the judge saying... He didn't say boilerplate. Well, I'll say boilerplate because... I didn't say boilerplate. We always do that. It's like, well, of course, if you're going to do that, Your Honor, we also ask that you do it equitably and allocate contribution appropriately. Why in the world would Tree Island, or the other defendant in the case, want to benefit Unical at trial by proving insolvency? The burden was theirs. On a practical level, the consequences of their failure to prove it falls on Unical because they're presumed admissible, I mean, presumed solvent. And being presumed solvent, they're going to be included in the denominator. We're not going to go out of our way to prove that. The presumed solvent basically comes from common law. From case law, yeah. And I could discuss various case law, but there's a good reason why when the court allocates liability among all the parties brought before the court, you presume they're solvent. And if they're not solvent, you prove that fact and then you reallocate shares. That's Unical's burden. We would not step up and try to help Unical by proving they were insolvent. After listening to a bunch of these cases, I'm amazed that anybody is still in this business anymore. Which business? Dealing with anything that's hazardous, chemicals, waste. Yes. Well, unless the court has other questions, I'll rest. No, thank you. Thank you. Thank you, Your Honor. Case disargate is ordered submitted. Take a break. Yeah. We'll take a 10-minute break before calling the last case on the calendar. Thank you, sir. Thank you.
judges: Trott, Paez, Berzon